IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA,     )
                              )
                              )
          v.                  )     1:13cr222 (JCC)
                              )
KENIA Y. VERGES, *et al.*,    )
                              )
     Defendants.              )

## M E M O R A N D U M   O P I N I O N

This matter came before the Court on January 31, 2014,
for oral argument on Defendant Alicia Rivera's ("Rivera" or
"Defendant") Motion to Suppress, [Dkt. 37], and Motion to Sever,
[Dkt. 38].  At the conclusion of the hearing, the Court denied
both motions.  This memorandum is intended to memorialize and
explain these rulings.

### I. Background

This criminal action stems from Defendant's alleged
involvement in a conspiracy to import heroin in violation of 21
U.S.C. §§ 952(a), 960(a)(1), and 963.[1]  (Superseding Indictment
[Dkt. 15] at 1.)  The Government claims that Defendant, along
with her daughter and co-defendant Kenia Verges ("Verges"),
acted as couriers to smuggle heroin into the United States from
Guatemala.  (*Id.* at 4.)  On July 24, 2010, Defendant allegedly

---

[1]  The facts alleged herein are either uncontested or supported by testimony
from the Government's witness at the suppression hearing, Michael Honicker.
The Court found his testimony credible and sufficient to reach the findings
below.

returned to the United States from Guatemala carrying a detectable amount of heroin secreted in foodstuffs. (*Id.*) The indictment further alleges that Verges performed a similar smuggling trip in March 2011. (*Id.* at 5.)

On November 5, 2011, Verges arrived at Logan Airport following a three-week stay in the Dominican Republic. (Gov't Opp'n [Dkt. 41] at 3.) Customs and Border Protection agents inspected Verges's luggage and interviewed her regarding her trips to the Dominican Republic and Guatemala. (*Id.*) Verges made a series of statements to the officers regarding her travels. (*Id.*) In response to a question concerning her trip to Guatemala in March 2011, Verges stated that Defendant had paid for her airline tickets. (*Id.*)

On March 6, 2013, Special Agent Michael Honicker of Homeland Security Investigations and Special Agent Houston Smith of the Drug Enforcement Agency traveled to Defendant's home to interview her and Verges regarding their travels to Guatemala and serve them with target letters. (Gov't Opp'n at 3-4.) When they arrived, the agents identified themselves, presented their credentials, and explained to Defendant that they wanted to speak with her regarding her travels outside the United States. (*Id.*) Defendant opened the front door and permitted the agents to enter the living room. (*Id.* at 4.) Verges joined shortly thereafter and the agents again identified themselves, presented

their credentials, and explained that they wished to discuss their travels to Guatemala. (*Id.*) Verges notified the agents that Defendant did not speak English, but she offered to translate their questions. (*Id.*)

Agent Honicker explained that this was a non-custodial interview in which they were not under arrest. (Gov't Opp'n at 4.) He further made clear that they did not have to speak with the agents, and they were free to ask them to leave at any time. (*Id.*) Defendant and Verges stated that they understood and agreed to speak with them. (*Id.*)

Agent Honicker then explained that Defendant and Verges were the targets of a federal drug smuggling investigation. (Gov't Opp'n at 4.) Agent Honicker stated that he knew an unidentified co-conspirator had paid them thousands of dollars to smuggle heroin from Guatemala. (*Id.*) Agent Honicker told Defendant that he knew she traveled to Guatemala with her son and smuggled the contraband in her luggage. (*Id.*) Defendant did not deny anything and simply stated that her son did nothing wrong. (*Id.* at 5.) Defendant then informed agents that she no longer wished to speak with them. (*Id.*) Agent Honicker provided Defendant with a target letter, which Verges read aloud in Spanish, and Defendant completed a financial affidavit. (*Id.*) Defendant then exited the living room. (*Id.*)

After Defendant left, Verges stated that the purpose of her trip to Guatemala was to perform marriage fraud. (Gov't Opp'n at 5.) Agent Honicker reiterated that he had been investigating Verges for months and there was strong evidence she was involved in a conspiracy to import heroin. (*Id.*) Verges then stated that she did not wish to speak with the agents any longer. (*Id.*) Agent Honicker provided Verges with a target letter and she signed a financial affidavit. (*Id.*) The agents then left the residence. (*Id.*)

Within a few minutes of their departure, Verges called Agent Honicker and indicated she would like to speak with him with an attorney present. (Gov't Opp'n at 5.) Agent Honicker explained that her attorney should contact the U.S. Attorney's office listed in the target letter. (*Id.* at 5-6.)

During the evening of March 6, 2013, Agent Honicker received a voicemail from a man identifying himself as Matt Smith and claiming that he was the attorney for both Defendant and Verges. (Gov't Opp'n at 6.) Smith left two telephone numbers and indicated that he had contacted the U.S. Attorney listed in the target letter. (*Id.*) Smith was never heard from again despite numerous attempts to contact him at the numbers provided. (*Id.*)

On May 16, 2013, a federal grand jury indicted Verges on a single charge of conspiracy to import heroin. (Indictment

[Dkt. 1] at 1.)  She was subsequently arrested at Logan Airport.
(Gov't Opp'n at 6.)

On November 13, 2013, a superseding indictment was
issued charging Defendant as a co-conspirator along with Verges.
(Superseding Indictment at 1.)  Defendant was arrested at her
home on December 2, 2013.  (Gov't Opp'n at 6.)  At the time of
her arrest, Defendant was advised of her *Miranda* rights in
Spanish.  (*Id*. at 7.)  Defendant acknowledged that she
understood her rights and that she was under arrest.  (*Id.*)
Special Agent Brendan Hickey, who is fluent in Spanish, reviewed
a Spanish *Miranda* form with Defendant.  (*Id.*)  Defendant signed
the form and waived her right to remain silent.  (*Id.*)

Agent Honicker, through Agent Hickey, then posed
several questions to Defendant.  (Gov't Opp'n at 7.)  Defendant
claimed that she traveled to Guatemala in July 2010 to see a man
named Maurilio.  (*Id.*)  Defendant could not recall his last name
and stated that she met this man a year prior while out having
drinks.  (*Id.*)  Defendant affirmed that she did not have his
contact information and her only interaction with him was in
person.  (*Id.*)  Defendant stated that she stayed with an
acquaintance for eight days while in Guatemala but could not
recall where the residence was located or who else lived there.
(*Id.*)  Defendant further claimed that the purpose of the trip

was to check the schools in Guatemala in anticipation of relocating there. (*Id.*)

Defendant was appointed counsel and appeared for arraignment on December 13, 2013. Defendant pled not guilty and requested a jury trial. (Arraignment Mins. [Dkt. 32] at 1.) Defendant's trial is currently scheduled for February 19, 2014. (*Id.*)

Presently before the Court is Defendant's Motion to Sever and Motion to Suppress. In her Motion to Sever, Defendant claims that a joint trial would infringe upon her confrontation rights as set forth in *Bruton v. United States,* 891 U.S. 123 (1968), because Verges made statements implicating Defendant in the alleged conspiracy. (Mot. to Sever at 2-3.) Accordingly, Defendant requests a separate trial. (*Id.*) Defendant's Motion to Suppress, in turn, asks the Court to preclude all statements made when the agents first interviewed Defendant at her home on March 2, 2013, and all statements made following her arrest on December 2, 2013. (Mot. to Suppress at 2-4.) Defendant maintains that both instances of questioning were improper under the Fourth and Fifth Amendments. (*Id.*)

The Government filed its opposition on January 24, 2014, contesting both of Defendant's arguments. (Gov't Opp'n at 1.) Defendant's motions are now before the Court.

## II. Analysis

A. <u>Motion to Sever</u>

The Court will first address Defendant's Motion to Sever, which requests that she be tried separately from her co-defendant, Verges. (Mot. to Sever at 2.) In support of her motion, Defendant argues that the admission of Verges's pre-arrest statement that Defendant paid for her airfare to Guatemala would violate the Confrontation Clause of the Sixth Amendment. (*Id.* at 3 (citing *Bruton v. United States,* 891 U.S. 123 (1968).)

Federal Rule of Criminal Procedure 8(b) provides that "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Once defendants are indicted together, there is a strong preference that they be tried together. *See Zafiro v. United States,* 506 U.S. 534, 537 (1993) ("There is a preference in the federal system for joint trial of defendants who are indicted together."); *United States v. Rusher,* 966 F.2d 868, 877 (4th Cir. 1992) ("[T]he general rule is that defendants indicted together should be tried together for the sake of judicial economy." (citation omitted)). The Supreme Court has endorsed the notion that a joint trial typically allows "the jury [to]

obtain[ ] a more complete view of all the acts underlying the charges than would be possible in separate trials" and thus "to arrive more reliably at its conclusions regarding the guilt or innocence of a particular defendant and to assign fairly the respective responsibilities[.]" *Buchanan v. Kentucky,* 483 U.S. 402, 418 (1987).

There are situations, however, where the interests promoted by joint trials are outweighed by prejudice to the defendants or the government. Federal Rule of Criminal Procedure 14 deals with this scenario and provides: "If the joinder of offenses or defendants . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief justice requires." Fed. R. Crim. P. 14(a). As stated by the Supreme Court, "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539. A defendant is not entitled to severance merely because he might have a better chance of acquittal in a separate trial. *See United States v. Lighty,* 616 F.3d 321, 348 (4th Cir. 2010).

In cases where the risk of prejudice is high, severance may be necessary; nevertheless, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro,* 506 U.S. at 539; *see also United States v. Hayden,* 85 F.3d 153, 160 (4th Cir. 1996) ("The mere showing of prejudice is not enough to require severance. Rather, tailoring of relief, if any, for any potential prejudice resulting from a joint trial is left to the district court's sound discretion." (citation omitted)).

The question of severance often arises when a defendant's statement inculpates a co-defendant, as is the case here. A criminal defendant's right to confrontation in the form of cross-examination is an important trial right guaranteed by the Confrontation Clause of the Sixth Amendment. *See Bruton,* 391 U.S. at 135–36. In *Bruton,* the Supreme Court held that the admission of a non-testifying co-defendant's confession that implicated the defendant at a joint trial was a violation of the Sixth Amendment, even though the jury was instructed to consider that testimony only against the co-defendant. 391 U.S. at 126.

The Court's holding in *Bruton,* however, does not automatically require severance in order to avoid this type of violation of the Confrontation Clause. In *Richardson v. Marsh,* the Supreme Court held that the admission of a non-testifying co-defendant's confession did not violate the defendant's rights

under the Confrontation Clause where the confession was redacted to eliminate not only the defendant's name, but any reference to her existence, and the court instructed the jury not to use the confession in any way against the defendant. 481 U.S. 200, 211 (1987). The Court left open the question of whether a confession that redacted the co-defendant's name and replaced it with a symbol or a neutral pronoun would be admissible under *Bruton*. *Id.* at 211 n.5.

The Supreme Court addressed this open question in *Gray v. Maryland,* 523 U.S. 185 (1998). In *Gray,* the Court held that a statement that has been redacted to replace the co-defendants name "with an obvious blank, the word 'delete,' a symbol, or similarly notif[ies] the jury that a name has been deleted," such that it was still both "facially incriminating" and "directly accusatory" falls under *Bruton* and is inadmissible. 523 U.S. at 195. Fourth Circuit authority interpreting *Bruton, Richardson,* and *Gray* makes it clear that a co-defendant's statements are admissible if redacted and replaced with a neutral pronoun or phrase such as "person" or "individual" or even "friend," "partner," "associate," or "client," provided that such a neutral identifier does not render the statement "directly accusatory" or "facially incriminatory." *See, e.g., United States v. Akinkoye,* 185 F.3d 192, 198 (4th Cir. 1999); *United States v. Cuong Gia Le,* 316 F. Supp. 2d 330, 334 (E.D.

Va. 2004). The Fourth Circuit has also extended *Richardson,*

"holding that a statement redacted such that a co-defendant's

name is replaced by 'a symbol or neutral pronoun' is admissible

under *Bruton* provided it is not facially incriminatory and thus

is admissible, 'even though the statement's application to [the

co-defendant] is linked up by other evidence properly admitted

against the defendant.'" *United States v. Smallwood,* 307 F.

Supp. 2d 784, 789 (E.D. Va. 2004) (quoting *United States v.*

*Vogt,* 910 F.2d 1184, 1191-92 (4th Cir. 1990)).

Here, Defendant takes issue with Verges's proclamation

on November 5, 2011, that Defendant aided her travels to

Guatemala. (Mot. to Sever at 3.) This statement is clearly

incriminatory because it implicates Defendant in the

Government's theory of the conspiracy.[2] Accordingly, the *Bruton*

issue in this case is whether Verges's statement can be redacted

without violating Defendant's Sixth Amendment rights. *See*

*Smallwood*, 207 F. Supp. 2d at 789.

Applying the principles outlined above, the Court

concludes that severance is not required. First, Defendant has

failed to identify the precise declarations which she contends

are problematic under *Bruton*. Instead, her motion merely

---

[2] The Government claims that Defendant will not be prejudiced by this
statement because they intend to refute its veracity at trial. (Gov't Opp'n
at 10.) This argument is unpersuasive. The prejudice remains irrespective
of the Government's intention because the jury may choose to take a different
view of the evidence. Thus, despite the Government's position otherwise,
Defendant will be prejudiced by the use of Verges's statements at trial.

provides that Verges "has made statements implicating [Defendant] in her travels to Guatemala." (Mot. to Sever at 3.) Such a vague argument is insufficient to warrant the relief requested. *See United States v. Lord,* No. 1:09cr159 (JCC), 2009 WL 1766605, at *2 (E.D. Va. June 19, 2009) ("[T]he Court cannot find that prejudice exists and that severance should be granted based on [the defendant's] strictly hypothetical arguments which fail both to articulate any specific instances of prejudice, and to give the Court sufficient information to determine the appropriate remedy." (citations and internal quotation marks omitted)). In light of Defendant's limited proffer, severance is inappropriate. *See United States v. Han Sa Yu*, No. 1:12cr280 (JCC), 2012 WL 3776486, at *3 (E.D. Va. Aug. 29, 2012) (denying motion to sever where defendant failed "to provide specific examples of inculpatory statements that could not be redacted so as to avoid *Bruton* problems").

Even accepting the Government's position that Defendant is specifically disputing Verges's statement "that [Defendant] paid for airline tickets for [her] trip to Guatemala," severance is improper. (Gov't Opp'n at 8.) This statement can be redacted consistent with *Bruton*. The substitution of a neutral pronoun, such as "person" or "a friend," would appear to alleviate the prejudice. *See United States v. Williams,* 936 F.2d 698, 700 (2d Cir. 1991) ("If the

confession . . . does not incriminate the defendant, then it may be admitted with a proper limiting instruction even though other evidence in the case indicates that the neutral pronoun is in fact a reference to the defendant."); *see also United States v. Smith,* 43 F. App'x 529, 533 (4th Cir. 2002) (noting that "the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession that has been redacted to eliminate the defendant's name and any reference to his existence where a limiting instruction is given, even though the statement is incriminating to the defendant when it is linked with other evidence introduced at trial").

Accordingly, the Court will deny Defendant's motion. Further issues regarding *Bruton* can be addressed at trial when the contested statements are actually before the Court.

B. <u>Motion to Suppress</u>

Defendant next argues that her statements to law enforcement officers on March 6, 2013, and December 2, 2013, should be excluded because they were involuntary and given without *Miranda* warnings. (Mot. to Suppress at 2-4.) Defendant further contends that her December 2, 2013, statements were made in violation of the Fifth Amendment. (*Id.* at 4.) According to Defendant, because she invoked her right to counsel after the March interview, law enforcement officers were precluded from

questioning her following her arrest.  (*Id.*)  As explained
below, these arguments are without merit.

     "A person subjected to custodial interrogation is
entitled to the procedural safeguards prescribed by *Miranda.*"
*United States v. Leshuk,* 65 F.3d 1105, 1110 (4th Cir. 1995)
(citations omitted).  Consequently, "any statements a suspect
makes during custodial interrogation are inadmissible in the
prosecution's case in chief unless prior *Miranda* warnings have
been given."  *Id.; see also Berkemer v. McCarty,* 468 U.S. 420,
434-35 (1984).  A person is "in custody" for *Miranda* purposes
when he is formally arrested or questioned under circumstances
in which his freedom of action is curtailed "of the degree
associated with a formal arrest."  *Leshuk,* 65 F.3d at 1110
(quoting *Stansbury v. California,* 511 U.S. 318, 322 (1994)).  To
determine whether an individual was in custody, a court must
examine all of the circumstances surrounding the interrogation,
*Stansbury,* 511 U.S. at 322, and determine whether "a reasonable
person [would] have felt he or she was not at liberty to
terminate the interrogation and leave," *Thompson v. Keohane,* 516
U.S. 99, 112 (1995).

     With respect to the statements made on March 6, 2013,
the Court finds that Defendant was not "in custody" as required
to implicate *Miranda*.  Defendant spoke with the agents in her
home, and they never attempted to curtail her movements or

actions.  In fact, the agents specifically informed Defendant that they would leave when instructed.  As a number of courts have concluded, these circumstances do not amount to custody. *See, e.g., United States v. Parker,* 262 F.3d 415, 419 (4th Cir. 2001) (finding *Miranda* warnings not required where defendant was questioned in her own home without any form of restraint, and was never told she was not free to leave); *United States v. Barefield*, 260 F. App'x 575, 575 (4th Cir. 2008) (finding defendant was not in custody where he was never handcuffed and repeatedly told he could leave).

During the hearing, defense counsel argued that the Court should find that Defendant was in custody because she did not speak English and the agents had no way of verifying Verges's Spanish translations.  This argument is unpersuasive. First, the record is devoid of any proof that Verges's translations were incorrect.  In fact, Defendant's statements during the interview compel the conclusion that she understood the agent's accusations.  Moreover, even if Verges misrepresented the agent's questions, the record is clear that Defendant did not feel restrained.  She voluntarily terminated the interview by leaving the room and telling the agents she no longer wished to speak with them.  As such, the Court declines to find that Defendant was in custody for purposes of *Miranda*.

Defendant's statements on December 2, 2013, are likewise admissible. Although it is undisputed that Defendant was in custody at this point, the record provides that she validly waived her *Miranda* rights prior to questioning. The issue of whether an accused has properly waived their *Miranda* rights involves two distinct inquiries: (1) whether the relinquishment of the right was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception"; and (2) whether the waiver was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine,* 475 U.S. 412, 421 (1986). "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." *Id.* at 422-23. Such is the case here. At the time of her arrest, law enforcement agents advised Defendant of her rights in her native language, and she knowingly and voluntarily relinquished those rights both in oral and written form. (*See* Gov't Opp'n, Ex. 1.) At no point did Defendant object to the waiver. Moreover, during the entire interview process, Defendant was awake, alert, and engaged. The testimony is

uniform in suggesting that Defendant understood what was happening to her. *See United States v. Santos*, No. RBD-13-321, 2013 WL 5604434, at *3 (D. Md. Oct. 11, 2013); *United States v. Moreno*, 122 F. Supp. 2d 679, 681 (E.D. Va. 2000).

Defendant's argument that her statements were involuntary also fails when studied under the appropriate constitutional standards. (Mot. to Suppress at 3.) "A statement is involuntary under the Fifth Amendment only if it is involuntary within the meaning of the Due Process Clause." *United States v. Braxton,* 112 F.3d 777, 780 (4th Cir. 1997). The test for determining if a statement is involuntary under the Due Process Clause "is whether the confession was extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *Id.* (citations and internal quotation marks omitted). The Supreme Court has held that "coercive police activity is a necessary predicate to the finding that a confession is not voluntary[.]" *Colorado v. Connelly,* 479 U.S. 157, 167 (1986).

"The mere existence of threats, violence, implied promises, improper influence, or other coercive police activity, however, does not automatically render a confession involuntary." *Braxton,* 112 F.3d at 780. Instead, the dispositive factor in a voluntariness inquiry "is whether the

defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired.'" *United States v. Pelton,* 835 F.2d 1067, 1071-72 (4th Cir. 1987) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 225 (1973)).  In assessing whether a statement is voluntary, a court must examine the "totality of the circumstances, including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." *Pelton,* 835 F.2d at 1071.

Based upon the evidence presented, the Court finds that Defendant's statements were voluntary.  Courts have found a defendant's statements involuntary where the police held a gun to the suspect's head, threatened to turn the suspect over to an angry mob, or deprived the suspect of adequate food and sleep. *See Beecher v. Alabama,* 389 U.S. 35, 38 (1967); *Payne v. Arkansas,* 356 U.S. 560, 564-67 (1958); *Brooks v. Florida,* 389 U.S. 413, 414-15 (1967).  The record is devoid of any such facts in this case.  Rather, the evidence demonstrates that Defendant is sufficiently capable of understanding her rights, and, despite this awareness, she chose to freely speak with law enforcement.  There is no indication that Defendant was subjected to physical conditions that caused discomfort or intimidation.  In short, nothing remotely suggests that Defendant's will was overborne and her capacity for self-determination critically impaired.  *See United States v.*

*Johnson*, 576 F. Supp. 2d 758, 763 (W.D. Va. 2008) (finding
defendant's statements voluntary where the record lacked
evidence of police coercion).

Finally, the Supreme Court's decision in *Maryland v.
Shatzer*, 559 U.S. 98 (2010), disposes of Defendant's Fifth
Amendment argument. (Mot. to Suppress at 4.) In *Edwards v.
Arizona,* the Supreme Court held that "when an accused has
invoked his [Fifth Amendment] right to have counsel present
during custodial interrogation, a valid waiver of that right
cannot be established by showing only that he responded to
further police-initiated custodial interrogation even if he had
been advised of his rights." 451 U.S. 477, 484 (1981).
According to *Edwards*, after an accused has invoked his right to
counsel, he cannot be "subject to further interrogation by the
authorities until counsel has been made available to him, unless
the accused himself initiates further communication, exchanges,
or conversations with the police." *Id.* at 484-85. If a suspect
does invoke his right to counsel during custodial interrogation,
a presumption arises that any subsequent waiver is involuntary.
*Arizona v. Roberson,* 486 U.S. 675, 681 (1988).

In *Shatzer,* the Supreme Court considered whether a
break in custody ends the presumption of involuntariness
established in *Edwards*. 559 U.S. at 110. After considering the
costs and benefits of the *Edwards* rule, the Supreme Court

concluded that a break in custody sufficient to eliminate the

*Edwards* presumption is fourteen days. *Id.* In explaining how

the new bright-line rule would work, the Court stated:

> In every case involving *Edwards,* the courts
> must determine whether the suspect was in
> custody when he requested counsel and when
> he later made the statements he seeks to
> suppress. Now, in cases where there is an
> alleged break in custody, they simply have
> to repeat the inquiry for the time between
> the initial invocation and the
> reinterrogation. In most cases, that
> determination will be easy. And when it is
> determined that the defendant pleading
> *Edwards* has been out of custody for two
> weeks before the contested interrogation,
> the court is spared the fact-intensive
> inquiry into whether he ever, anywhere,
> asserted his *Miranda* right to counsel.

*Id.* at 111-12.

Accordingly, the Court has determined that *Edwards*

does not apply if there has been a break in custody lasting for

a period of fourteen days or more. *See United States v. Guzman,*

603 F.3d 99, 105 (1st Cir. 2010) ("In *Shatzer,* the Supreme Court

established a bright-line rule that if a suspect who has invoked

his right to have counsel present during a custodial

interrogation is released from police custody for a period of

fourteen days before being questioned again in custody, then the

*Edwards* [rule] . . . will not apply.").

In this case, even assuming Defendant was in custody

and sufficiently invoked her right to counsel on March 6, 2013,

there was a lapse of nearly ten months prior to the next custodial interrogation. This interval far exceeds the fourteen-day period set out in *Shatzer*. Accordingly, law enforcement did not run afoul of the Fifth Amendment or *Edwards* when, on December 2, 2013, they advised Defendant of her rights and conducted a custodial interrogation without counsel. *See Guzman,* 603 F.3d at 105-06 (concluding that a lapse of four months between when defendant originally invoked his right to counsel and the second interrogation was sufficient to trigger *Shatzer's* break-in-custody exception to *Edwards*); *Tineo v. Heath*, No. CV-09-3357 (SJF), 2012 WL 4328361, at *13 (E.D.N.Y. Sept. 19, 2012) ("Although petitioner was in custody at the time that he had previously invoked his Fifth Amendment right to counsel with respect to the unrelated pending charges against him, there was a break in custody of more than four (4) months between that prior interrogation and his interrogation relating to the charges under lying his judgment of conviction in this case, during which he made the statements to law enforcement officers that he seeks to suppress. Thus, the *Edwards* rule does not mandate suppression of his statements.").

## III. Conclusion

The Court's rulings of January 31, 2014, were consistent with and based upon the foregoing analysis.

/s/

_____
James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE

February 6, 2014
Alexandria, Virginia